# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LARRY D. CONLEY,**

      **Plaintiff,**

      v.                                                    Case No. 11-C-0308

**MICHAEL THURMER, DON STRAHOTA,
LT. BRAEMER, SGT. LAWSON, OFFICER
MASON, OFFICER GIZA, OFFICER HIBERT,
OFFICER LARAMORE, OFFICER WOLF, AND
JOHN DOES,**

      **Defendants.**

## ORDER

      Plaintiff, who is proceeding pro se, lodged a civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the court on plaintiff's petition to proceed in forma pauperis.

      The plaintiff is required to pay the statutory filing fee of $350.00 for this action. See 28 U.S.C. § 1915(b)(1). If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. Plaintiff has already paid an initial partial filing fee of $3.27. He submitted an affidavit of indigence indicating that he is unable to pay the costs of commencing this action. From this, I conclude that he meets the poverty requirements of 28 U.S.C.§ 1915(a).

      The court is also required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief

may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted)

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. Erickson, 551 U.S. at 94.

Plaintiff is incarcerated at the Waupun Correctional Institution. From the complaint, it appears that he was placed in segregated confinement from October 28, 2010 to January 28, 2011. Plaintiff alleges that his cell "was freezing with no heat circulation, causing him to shiver and shake while fully dressed." (Compl. at 1.) He states that he requested extra blankets and thermal wear on several occasions, but his requests were denied. According to plaintiff, "[i]t was so chilly in the plaintiff [sic] cell that he could not properly get ... sufficient sleep during his entire stay in cell segregation." (Id. at 2.) He states that he wrote to the warden regarding the lack of heat and did not receive a response. Plaintiff further alleges that the lights in his cell were on at all times and that he had no outside view and that these conditions allegedly contributed to his insomnia, headaches, hallucinations, weight loss, and paranoia. (Id.) Plaintiff states that defendants were aware of the conditions and failed to take steps to ameliorate them. (Id.)

On December 10, 2010, plaintiff was placed on "paper and pen restriction" for ten days. He alleges that during this restriction, he did not receive mail or adequate toilet paper. He also did not have access to legal materials or medical and phone request forms and could not practice his religion, as his Bible was removed from his cell. (Id. at 3.) Finally, he alleges that he suffered serious medical problems during his restriction and "was unable

3

to request ... any medical care until after the restrictions ended." (Id. at 4.) Specifically, he alleges that his "rectum area ... became sore and began to show streaks of blood," and that he suffered a heart attack soon after being taken off pen and paper restriction. (Id.) It appears from the complaint that he received medical assistance the same day the alleged heart attack occurred.

Plaintiff claims the above-described descriptions violated his civil rights. According to the complaint, "the actions by the defendants ... was [sic] done without the adequate supervision and training, under the color of law in deprivation of plaintiff's civil and constitutional rights." (Id. at 5.) For relief, plaintiff requests $100,000 in compensatory damages and $200,000 in punitive damages.

Although plaintiff fails to state the legal theory upon which his claim rests, his allegations center on the conditions of his confinement. Thus, his claim involves the Eighth Amendment's ban on cruel and unusual punishment, applicable to the states through the due process clause of the Fourteenth Amendment. See, e.g., Robinson v. California, 370 U.S. 660, 666 (1962).

To make out an Eighth Amendment claim based on prison conditions, an inmate must allege that he or she suffered an objectively, sufficiently serious injury and that prison officials inflicted the injury with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The United States Supreme Court has defined an "objectively, sufficiently serious injury" as one which deprives the inmate of "the minimal civilized measures of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Only extreme deprivations will support an Eighth Amendment claim. Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001). Moreover, prison conditions will not rise to the level of cruel and unusual

4

punishment unless the conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise." Wilson v. Seiter, 501 U.S. 294, 299 (1991) (emphasis added). To state a claim for relief under the Eighth Amendment, a plaintiff must also allege that prison officials acted with deliberate indifference. Dixon v. Godinez, 114 F.3d 640, 645 (7th Cir. 1997). Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. See id.

In Dixon, the court held that cold temperatures may constitute a serious injury for purposes of an Eighth Amendment claim. Id. In that case, the prisoner, Dixon, asserted that his cell was maintained at inadequate temperatures (approximately forty degrees Fahrenheit) during the winter months of his four-year sentence. Id. at 643-45. Dixon was issued long underwear, a cap, gloves, and a jacket; he was also given two sheets and a blanket. Id. However, he "asserted that this clothing was insufficient to keep his extremities from getting freezing cold while he [sat] in his cell, and made it impossible for him to write or do legal work." Id. Dixon requested extra blankets and a space heater from prison officials, but his requests were not fulfilled. Id. The court ultimately held that there existed a material issue of fact "as to whether the prison's standard-issue clothing and bedding provided Dixon with the constitutionally necessary minimum protection against severe cold." Id. at 644. In its decision, the court noted the importance of both the conditions of confinement and length of time the conditions persisted: severe temperatures which last for several days to a week may not constitute cruel and unusual punishment, while less severe (though still cold) temperatures "which might not ordinarily violate the Eighth Amendment may nonetheless do so if [the cold temperatures] persist ... over an extended

period of time." Id. at 643. Lastly, the court placed importance on the fact that Dixon alleged cold temperatures <u>combined with</u> other intolerable conditions, including inadequate plumbing, pest infestation and broken windows. Id. at 642.

Here, plaintiff alleges a serious injury (insomnia, headaches, hallucinations, weight loss and paranoia) based on the conditions of confinement and length of time such conditions persisted. See Dixon, 114 F.3d at 642. Heat is a "single, identifiable human need"; thus, the lack of adequate heating may constitute a serious injury. See Wilson, 501 U.S. at 299. Although the allegation regarding the cell lighting is not in and of itself sufficient to show a serious injury, as proper lighting is not a "single, identifiable human need," it may have contributed to his inability to sleep along with the inadequate heating. See id. As such, this allegation is relevant to plaintiff's claim. See id. Moreover, the lack of toilet paper could be viewed as an "intolerable condition" which, coupled with the cold temperatures and lighting, constituted cruel and unusual punishment: indeed, the Dixon court placed importance on the fact that the plaintiff alleged not only cold temperatures but also other conditions such as inadequate plumbing. 114 F.3d at 642. Although the conditions in the present case did not persist as long as the conditions in Dixon, plaintiff appears to have remained in the cold cell for several months. The alleged "cruel and unusual punishment," then, lasted longer than several days or a week. See id. at 643. Hence, plaintiff has sufficiently alleged that he suffered a serious injury based on both the conditions of confinement and the duration of time these conditions persisted. See id. at 642-45.

Plaintiff also alleges that prison officials acted with deliberate indifference regarding the inadequate heating, lighting, and lack of adequate toilet paper. See id. at 645.

According to the complaint, plaintiff requested additional blankets, clothing and toilet paper from prison officials on several occasions. He alleges that he wrote to the warden regarding these requests and did not receive a reply.

Thus, plaintiff has sufficiently alleged both elements of an Eighth Amendment claim - a serious injury and a deliberate indifference on the part of prison officials. See Dixon, 114 F.3d at 642-45.

Plaintiff additionally alleges that serious medical needs, including rectal bleeding and heart problems, arose during his pen and paper restriction and that prison officials removed medical request forms from his cell, thereby denying him access to medical care. A plaintiff can show that he suffered a serious injury if he was prevented from receiving adequate medical care. For example, in Estelle v. Gamble, 429 U.S. 97, 104 (1976), the Court held that deliberate indifference to prisoners' serious medical needs may violate the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." Id. Here, plaintiff's allegations regarding inadequate medical care are sufficient to form the basis of an Eighth Amendment claim. See Estelle, 429 U.S. at 104. He has sufficiently alleged serious injuries (the rectal bleeding and heart attack) and a deliberate indifference on the part of prison officials (the taking away of medical forms). See id. Thus he may proceed on his Eighth Amendment claim.

For the reasons stated,

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Doc. #4) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Attorney General and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Attorney General for service on the state defendants.

**IT IS ALSO ORDERED** that defendants shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $346.73 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that plaintiff shall submit all correspondence and legal material to:

>Honorable Lynn Adelman
>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 14th day of July, 2011.

/s_____
Lynn Adelman
District Judge